in his official capacity as Secretary of the Navy and United States Avalanche. Ms. Barmore for the Avalanche, Mr. Vladeck for the Avalanche. Good morning, Ms. Barmore. Good morning. May it please the court. I'm Cynthia Barmore here for the government. I'd like to reserve two minutes of my time for rebuttal. For about a hundred years, the Fleet Marine Corps Reserve has, by statute, been part of the military, and its members have been subject to court martial jurisdiction. The same has been true for retirees breathing longer, who bear many similarities to Fleet Marine Corps Reservists. These decisions are within Congress's Article I authority to organize the armed forces and to make rules for their governance. As the Supreme Court held nearly 200 years ago, in dimes, Congress has, Congress may subject persons actually in the armed service to trial by court martial. And Fleet Marine Corps Reserve members are actually in the armed service, which we know for at least three main reasons. The first is that Congress has made that determination, and is entitled to deference for doing so. The second is that it is consistent with longstanding historical practice. And finally, objective addition confirms the plain reasonableness of Congress's decision in this area. Can I ask you a question about the first point, please? You mentioned deference. But all the cases you cite for judicial deference are cases where the service member involved was already in active service. He's part of a service. He was a member. He was in active service. I don't think any of them involve situations that we face here where the question is whether someone's in the military service. Why would the courts, why, especially given Toth and cases like it, would the courts defer deeply to that question, given that there are other constitutional provisions at stake, like Article III and the Fifth and Sixth Amendments? Your Honor, there are a couple of reasons why deference would be appropriate in this area. The first is that not only is Clause 14 at issue, but also Clauses 12 and 13, where the Supreme Court in purpose emphasized that Congress's power in this area also is plenary and exclusive to both form and organize the armed services in the first instance. There is deference that accords to Congress's decision to, in the first instance, define the Fleet Marine Corps Reserve by statute as part of the military. Suppose Congress passed the bill because of, say, a particular military situation somewhere in the world. There are many, many more contractors and civilian employees working with the military. Suppose Congress decided to subject all civilian employees of the military to court martial jurisdiction. Would we defer to that? Your Honor, we don't contend that there is an unlimited authority here at issue. But looking to the Supreme Court's decision in Guadalajara is quite helpful for your question, because in that case, the Supreme Court held that you could not subject civilian employees to court martial jurisdiction. However, in that case, at the end, the Supreme Court did say that Congress could quite easily solve the jurisdictional problem in one of two ways, either by having these civilian employees either voluntarily or non-voluntarily enlist in the military as a formal matter or by following an ex parte retype procedure, which is what governs paymaster clerks, where they are appointed for a permanent tenure until discharged, and they agree in writing to be subject to court martial jurisdiction. And so the first point there suggests that Congress could require civilian employees as part of their service abroad with the military to enlist in the military, and there wouldn't be a constitutional problem. The question you and I are talking about, though, is the extent of judicial deference. And I want to go back to my original question. Here, the question is whether a particular person or category of persons is in the military. And Toth and subsequent cases say that the courts have a significant role in supervising Congress's decisions in that area, don't they? In making these determinations. It says... I mean, that's what Toth and the other cases say. I guess what I... I understand your point that we do owe some deference, but I just don't... You haven't convinced me that the courts have no role here given the serious Article III and Fifth and Sixth Amendment questions that are at stake. Well, Your Honor, we are not contending that Congress has no role. But I think Your Honor's question is getting at whether there is an active duty limitation versus an inactive duty limitation on the approach that we have been proposing. And I would... There really is no limitation that Congress's make rules authority is limited to active duty forces alone. We know that for several reasons. First, Solorio... When the Supreme Court decided Solorio, it discussed how Clause 14 needs to be interpreted according to its plain meaning. And the land and naval forces discussed in Clause 14 is not qualified by their active duty or non-active duty status. Instead, what Solorio said was that military status is what's important. And military status includes being ready to fight wars should the occasion arise, which is equally true for inactive duty troops. Tyler itself, when the Supreme Court decided Tyler in the 1800s, it expressly noted that, quote, qualified relief from active duty did not discharge retirees from their other obligations as part of the military. Ms. Cormer, can I... Can we step back from talking about these cases? And let me just ask you a question here. Maybe you could help me in terms of how I think about this case. You already said that the question... And I agree with you about this. The question we have to decide, right, is whether members of the Fleet Marine Corps actually are members of the armed service, right? That's the question, correct? Yes, Your Honor. And that's a question which turns on whether the person has... Whether members of the Fleet Marine Corps have military duties and are subject to military orders, correct? Your Honor... Do you agree about that? Isn't that what this turns on? Well, what this turns on is... We agree that this case turns on whether the Fleet Marine Corps Reserve is actually part of the military. My second question is, that question in turn turns on whether... Whether they have military duties and are subject to military orders and discipline, correct? Now, Your Honor, I am not aware of any court that has announced that particular test. However, if that is the test, the Fleet Marine Corps Reserve satisfies it. Well, let's go back to what the courts... I mean, McElroy says that's the Paymaster case. TOEF itself says that. They all talk about being part of the military structure, subjecting yourself to military discipline. I guess I'm a little surprised if you don't think that's the standard. But tell me... I mean, think about it for a minute. Why else does Congress have the authority to allow the military to court-martial its members, right? It's for discipline, correct? It's to discipline the military. That's part of the... That's why we allow the military to discipline its members outside of the Article III courts, right? That's exactly right. Okay. So, okay. So, and in fact... So, okay. So, then if we agree on that, and you and I can... Let's set aside our disagreement about defense, okay? Just assume for a minute that I think there is not quite as much judicial deference as you think there is. So, now that we agree on the standard, let me ask you about this case, okay? So, and I want to be sure I'm right about this. As I read the record, members of the Fleet Marine Corps, they don't have any specific military duties, right? I mean, and I don't see you disagreeing with that in the brief. I mean, you know, they don't have commanding officers. They aren't assigned to specific commands. They can't issue orders. I mean, they don't have any military duties at all. And as you point out in your brief, they're subject to recall, right? Which I want to talk to you about in a minute. And they have these other obligations, like keeping their addresses up to date, rules about wearing their uniforms, and things like that. And I want to ask you a question about that. How does the military enforce or ensure compliance with those rules? Do you know? There are a variety of different ways the military can enforce rules beyond court-martial jurisdiction. There are sub-court-martial jurisdiction administrative procedures, which I imagine could be used in that type of situation. Do you know, as a practical matter, how the Corps does manage these kinds of obligations? Whether there's the service-related, whatever the service-related obligations are, wearing their uniforms, keeping their addresses up to date, and things like that. Do you know how the military... I am not aware of how the military... If somebody doesn't report their address, I'm not sure exactly how they... They don't do... Well, let me ask you this question. I actually just don't know the answers to these, and they'd be very helpful for me to know. Do you know whether or not... Do you know whether or not the military ever court-martials members of the Fleet Marine Corps for violating these kinds of duties? These kinds of obligations? For example, not reporting their address? Yeah, right. I'm not aware of any court-martial in that type of situation. And what about for other, quote, service... Let's not get into the debate about service-related or not, but for members of the Marine... Members of the Fleet Marine Corps, do you know whether they are court-martialed for other service-related infractions? Like, I mean... Like, what about insulting an officer? Well... So, for the Fleet Marine Corps, there's specifically no, but this court's decision in Clawson v. Arms did involve a impertinent letter that a retiree sent to his superior officer, and so that was a court-martial for that type of infraction. Of course, that was a pretrial case, right? Yes. All right. Okay, so then let me focus in on this now. So, the only order, the only type of order that members of this Corps are sent to is an order to return to active duty, right? That is correct. Could you please repeat your question? That's it. That's the order. Members of the Fleet Marine Corps are subject to one category of order, namely, an order to be recalled to active service, right? Well, setting aside the other ones that we've been discussing about, you know, reporting their addresses versus drawing their pay, which are service obligations that this court described as limited duties that would make... But those aren't the result of orders, military orders, right? Those are just obligations that they have by being members of this Corps, but they are orders. The obligations are in the sense of an order. There is an order in the sense that there are many military regulations that order compliance  that, you know, would count as an order, I would imagine. Well... Well, assume... Just help me from that. Assume that I think that those are more, you know, regulatory requirements. Because none of them flow from a military order. The kind of order that I thought you and I agreed is one of the questions we look for to determine whether someone's a member of the military service. Are they subject to military discipline? So let's assume for a minute that the major order, and you make a... You emphasize this in your brief that they're subject to being ordered return to active duty, right? Yes, that is certainly a primary obligation. So would it be fair for me to say... So the question before us is whether that is enough. Whether that's enough for Congress to subject the entire... All members of the Fleet Marine Corps to the possibility of court-martial... Court-martial jurisdiction, right? I'm happy to focus on that duty if you would like to, Your Honor. Yeah, go ahead. So looking at just the possibility of recall to active duty, I would again point this court to its own decision in Clausen v. Arms where it talked about being assignable to duty to the soldier's home as itself a military duty that made retirees in the military. Where they were not on active duty in the soldier's home at the time, but they were assignable to that duty. Well, as I said before, you know, Clausen's a pre-tove case. And we have to... And under tove, the question... Isn't the question we have to... Don't we have to interpret... Don't we have to... I'm almost quoting here from tove. Don't we have to interpret Clause 14 as narrowly as possible to, quote, avoid encroaching on the jurisdiction of Article III courts? Clausen wasn't subject to that. Besides, Clausen wasn't a court-martial case anyway. John, I say I'm out of time to answer your question. No, you keep... No, no, no, please, please. Besides, my poor... My colleagues haven't had any sleep since. And I bet they have a lot. So... Yeah. So here's what I'm getting... Right, right. Here's what I'm getting at. Look, here's the core of my question. And I don't think this is... I don't think this is an easy case. I think this is hard. But as I see it, the question is whether the fact that there's... That members of the court are subject to an order to recall them to active service. Is that enough to subject the court article to court-martial jurisdiction when, under tove, we have an obligation to interpret it narrowly to protect people's rights in the Article III courts? And also... And also, given the fact that we're talking about... I can tell... This is not in the record, but as best I can tell, there's more than 2 million people who are in the... Who are retired. Military. And tove itself thought the total number of people being brought under military jurisdiction was important. So... So my question is, how do you make the case that that order by itself is enough to bring these 2 million people under court-martial supervision? That's my question. That's who I'm asking. You could make the argument that you could, but I'd like to hear it. No, Your Honor. My first reaction is that this language in tove is really about what to do when you have civilians being subjected to court-martial jurisdiction. Tove emphasized the civilian nature of discharged service members who are wholly different from other service members who have not been discharged from the military. And so the court has recognized that in certain narrow circumstances, it can nevertheless be appropriate to consider somebody not formally in the military to be still in the land and naval forces for purposes of Clause 14. But in this type of case, where you don't have a civilian at issue, it's not this court's role to strictly evaluate the military necessity of subjecting someone to court-martial jurisdiction because that authority is really granted to Congress to weigh in the first instance. You said earlier in the argument that Congress's power is not unlimited here. So I would be interested to hear from your perspective what the limit is. If the courts are to have some role, which I think you can see they have some role in determining who is in the land and naval forces, then what is that limit precisely? Is it the limit that Judge Tatel suggested? Is it a different limit? Yes, Your Honor. So we have not in our briefs suggested a specific hard limit to govern these edge cases that may arise where the court would have a role and could say that Congress exceeded its authority. And we have two main reasons why we don't think it's appropriate in this case to draw that limit. The first is that in the Supreme Court's decision in Reed v. Covert, the Supreme Court was very clear that when confronted with this type of case about the limits of court-martial jurisdiction, the court should really only focus on the person before it and the type of person that would be affected by that decision. The plurality said that it would not precisely define the boundary between civilians and members of the land and naval forces. And then Justice Frankfurter in concurrence said basically the same thing and said that he would only judge what had been enacted and what was at issue. And so in this kind of area, I wouldn't want to get ahead of Congress not knowing what kind of military exigency could justify a particular exercise of court-martial jurisdiction in the future. So is that a suggestion that we can only decide this case as applied to Mr. Larabee and that we shouldn't think about the facial challenge to subjecting all fleet marine reservists to court-martial jurisdiction? No, Your Honor. This court's decision, I think, would govern fleet marine corps reservists generally. My only suggestion is that this court doesn't have before it a case that does not involve the fleet marine corps reserve. That might be sort of a sham case where we could come up with really outside hypotheticals. It could be at the boundary of Congress's power. But here, and this gets to the second reason why there's no need in this case to do so. There's really, under any metric, the fleet marine corps reserve is part of the military and reasonably so, both on functional criteria and the formal criteria that we've already discussed. It does seem though, I mean, much of the discussion about whether, you know, the fleet marine reservists are part of the armed services seems to depend on the fact that Congress has said that they are. And I mean, in other contexts, the court does not usually let Congress define the boundaries of its own power, right? So the court will not defer to Congress's judgment that a certain activity is interstate commerce, for instance, right? You know, once the court determines something is interstate commerce, of course, Congress may regulate it in a fairly plenary fashion. But, you know, that first question about whether this is actually the type of thing that's allowed to be regulated. I guess I'm not sure. So, I mean, in your view, there's just, there's no reason in this case to articulate what the principle is or what the limit principle is. That's exactly right, Judge Rao, because here we have a express constitutional provision that does give Congress authority to form and organize the armed services in the first instance. And that itself is plenary and exclusive and gives Congress at least entitlement to respect from Article III courts in terms of who is in the military. But again, in this case, where we have so many functional military status along with longstanding historical practice, treating retirees as in the military since the 1800s, there really is no reason in this case to draw a hard outer limit or a boundary or try to define a rule that would govern non-fleet Marine Corps reservists. So, assume I need a limit. What is your limit? I give that you don't think we need to draw a line. But if I think we need to draw a line, what line should we draw? I mean, if I were pushed to provide some sort of possible outer limit, I would imagine that Congress could not create a sham component of the armed services, for example. So, following the Supreme Court's decision in Reesey Covert, which held that civilian dependents could not be subject to court-martial jurisdiction, I don't think Congress could turn around the next day and create a spouse force and make all spouses part of the military with no other action. That would be a sham to evade the judicial limits on court-martial jurisdiction. So, I think I agree with... I think that's the test I came into this argument thinking probably makes a lot of sense, is Congress gets to deem who's in the military. But the check on that is it can't be, in your words, a sham. That's a good word for it. What's the test for what is a sham? That is a great question, Your Honor, that I think illustrates why this case is so far afield from that and why trying to develop this one is very difficult because we just hadn't needed to breathe or develop that type of argument for what would be a sham. And I wouldn't want to... Ms. Fairmore, I understand you don't think we need to answer the question, and maybe we don't. And I won't belabor it beyond just one more attempt. If I do think we need a test for what is a sham, do you have a test to propose? I do not at this time have a test to propose, Your Honor. Okay, I understand that. What about, I'm sorry, no, you go ahead. Oh, please, Judge. I was just going to follow up your question, which is, go back to my original hypothetical. Suppose Congress said that all civilian employees of the military are now in the military. Would that pass your sham test or not? Well, historically, every time that Congress has attempted to conscript people into the military, it has created a procedure whereby somebody has to formally enlist in the military. No, no, no, no, not a conscription, just they pass a law saying that anybody who's a civilian employee is now a member of the military. So if you decide to be a civilian employee, you're in. You're probably in the military. Well, I think, so... Subject to court-martial jurisdiction. I mean, two responses, Your Honor. How would you... Whatever the standard is that Judge Walker was looking for, how would that determine the outcome of that case? Well, I think that particular case would be, you know, a lot of guidance has come from the Supreme Court decision in Guadalajara where the Supreme Court did expressly say that there would be no problem with subjecting civilian employees to court-martial jurisdiction so long as those employees were made part of the military, either through voluntary or compulsory induction. And so in your hypothetical, it seems that what you're suggesting is that Congress would be formally making those individuals part of the military and that new civilian employees who join would in fact be enlisting in the military. And the Supreme Court said in Guadalajara there would be no problem with that. So what would be the problem? And why would it be a sham for Congress to take the same action with respect to a service member's dependents? Like, why would that be a sham? Well, Your Honor, even... In that case, would Congress not just say it's necessary and proper to, you know, the government and regulation of the land and naval forces? I mean, once again, Your Honor, I am very wary of getting into these outer hypotheticals just because I don't know what kind of military exigency Congress could be confronting that might change the calculation. But the way that I've been thinking about that type of issue is just that in Reiki covert, the Supreme Court recognized there could be instances where somebody like a civilian dependent or a civilian just generally might be subject to court martial jurisdiction that they could be fairly considered to be in the military. But it reasoned that civilian dependents had never served in any capacity in the military, had never been in the military. And so in that kind of fairness analysis, which the court also, again, repeated in Cancela, I think that there would be a concern that there might be a sham type of situation at play. Ms. Bearmore, why do we have a fleet reserve? Why do you think Congress created one? Yeah, I think it's pretty clear. Congress created the Fleet Marine Corps Reserve to have this experienced pool of service members who could be recalled to active duty without any need for further training. So they've all served in the military for at least 20 years on active duty. In that respect, they're quite different from a new recruit or most inactive reservists. And they are ready to be deployed in a leadership capacity to draw on their wealth of experience in times of need. And so having that to draw on is, I think, Congress's primary concern. Do you know when someone like Staff Sergeant Larabee would be allowed to wear the uniform before his crime? Yeah, so there is a regulation that we cite in our brief that details the circumstances where he could wear his uniform. I forget the exact time, but it is written there. You can readily pull it up. And he's also allowed to sometimes introduce himself as Staff Sergeant Larabee rather than Mr. Larabee, right? Yes, Your Honor. I know we're long on time, so I just have one question. It's that one last question from me. And it doesn't go right to the question presented, but it's been on my mind. Do you have a sense of why the sentence in this case was so low, eight months for sexually assaulting an unconscious spouse of a Marine recording it? Your Honor, the sentence was originally 10 years with confinement. Most of that was obviously suspended. I don't know why it was so low, but I obviously agree. The facts of the case are egregious. It does actually go a little bit to the question presented in this way, and I want to ask Mr. Vladek about this too. Sexual assault has been a blemish for the military. And there's certainly a military interest in remedying not just the substance of that, which is most important, but also the image, the reputation, the honor of the armed forces. My understanding from a quick Google search is the military spends something like $600 million a year on public relations. And it's got to be something of a blemish if someone who can refer to himself as a staff sergeant and wear a uniform is able to go around doing what he did without the military being able to punish him, which in this case, they didn't punish him very much. Do you think that alone would be a sort of sufficient interest for why Congress would have chosen to make the Fleet Reserve subject to court-martial? Your Honor, the facts of this case illustrate exactly why service members are subject to court-martial jurisdiction, where you need to have order and discipline in the military, and when service members sexually assault the wives of active-duty service members, considering not only just the perpetrator here, but also the victim having a military status. There is ample grounds for Congress to want to retain order and deter this type of crime, absolutely. Thanks. Of course, that's an interesting point. I mean, implicit in your answer, Walker. In fact, you say this in your brief, I think. You say that if Larrabee had not been subjected to court-martial, he would have escaped prosecution altogether. You do say that in your brief. And Larrabee has two responses to that, that you didn't really deal with in your reply brief, that relate to this question I think Judge Walker is asking you. One of his answers is that Toth and Kinsella both reject that argument. But the other one, which relates to this, is that they say, look, the military tied its own hands here, because by determining that Larrabee was a member of the armed forces and therefore ineligible for prosecution under the Military Extraterritorial Jurisdiction Act. So, you know, there's a way to solve this problem for the military. And that is if they're not, if a person like this is not the member of the service, he can be prosecuted, can't he, in the Article III courts under the Military Extraterritorial Jurisdiction Act, right? Your Honor, in all likelihood, somebody in Mr. Larrabee's situation would be subject to prosecution under MNJA. I would point out that MNJA only covers felony offenses. And so if somebody were to shoplift less than $1,000 in a commissary, they would not be subject to prosecution. But Congress can change that if it needs to. I mean, that's what Toth and the other cases say. They say, look, Congress has control over this, right? If Congress can't provide that people like Larrabee are subject to court martial, it can provide that they're subject to punishment under other procedures, the Article III courts, and it doesn't have to limit it to felonies, correct? So we don't have an either or situation, right? That is true, Your Honor. But what the Supreme Court has also said is that the choice of forum, whether a federal court or court martial to be tried in, is not given to the service member. And similarly, this court has only evaluated this type of military necessity in the civilian cases. In the service member cases where somebody is in the service, the court has recognized that Congress has a need to create a separate and distinct system of military justice to ensure discipline and order in the military. And that is exactly what we have here. Okay. I just have two fact questions for you. Number one is, do you know how many people there are in the Fleet Marine Corps? I do not, Your Honor. I just tried to find that out. I think the reserve itself has about 35,000 maybe, but I don't know how many are in the Fleet Marine Corps Reserve. And the other services, Army, Navy, I'm sorry, the Army, the Navy, and I assume the Air Force, they have comparable organizations, right? No, Your Honor. So this particular type of 20-year service is only in the Marine Corps and in the Navy. The Army and the Air Force do not have a similar 20-year fleet. I think we'd appreciate if you could let us know. Did you say you tried to find out and couldn't? We just don't know the answer to this question. Oh, no, I'm sure I could. I just briefly tried. Okay. Would you let us know? Here's my last question. Am I right that whatever we decide here with respect to the Fleet Marine Corps will control all the entire military retiree population? That this is a question of how retirees are treated, correct? Your Honor, we think that retirees are equally subject to court martial jurisdiction, but not necessarily, depending on how this court writes the decision, the Fleet Marine Corps reserve is the only thing before it, and they are subject to active duty recall under a broader set of circumstances than retirees. Okay. That's helpful. That's helpful. Okay. Well, unless Judge Randall, Judge Walker, do you have anything else? Not for me. Okay. Why don't we hear from Mr. Laherty and Ms. Palmer. We'll give you some extra time. Okay. Your Honor, may it please the court, good morning. I'm Steve Vladeck, representing the Plaintiff Appellee, Stephen Larrabee. So I'd like to actually pick up where Your Honor's questioning left off with regard to the implications of the government's position. Ms. Barmore, I think, quite assiduously tried to avoid discussing what she referred to as the boundary cases. I want to suggest that that actually isn't something this court can avoid. Under the government's position in this case, nothing would stop the government from court-martialing a 90-year-old Korean War veteran who retired after being injured in the war for shoplifting a newspaper from his local supermarket. Nothing would stop the government from court-martialing a veteran of the war in Afghanistan who retired after 20 years of distinguished service and publicly criticized the controversial withdrawal from Afghanistan earlier this year. Indeed, Article 88 would specifically authorize court-martial of that individual for using contemptuous words toward the President, the Secretary of Defense, or any number of other executive officials. And that's just under existing statutes. On the government's theory of deference, nothing would stop Congress from going further and from subjecting to constant court-martial jurisdiction anyone and everyone who Congress deems to be in the military. I'm sorry, Judge. Could you elaborate on your test for the boundary cases, or as Ms. Fairmore called them, the sham cases? So, I mean, with respect, Judge Walker, I don't actually think a sham is the right way to think about it. You know, we don't dispute that Congress has a lot of control here. The control Congress exercises, and this goes to one of Judge Tatel's questions to opposing counsel, is what kinds of duties does the individual have at the moment they're subject to court-martial? And so this is why we think it's so critical that retirees, members of the Fleet Marine Corps Reserve, have none. Because, Judge Walker, there could be close cases. Inactive reservists, for example, might pose close cases. But here, there are no training obligations. There are no maintenance obligations. There are no fitness obligations. Why is that the test? What's the case for why that should be the test? So I think there are multiple cases, Judge Walker. I think it's not just Toth. I think it's Toth covered. I'm sorry. I didn't mean literally court cases. I meant what's the argument for why that's the test. I'm sorry. So I think the argument for why that's the test is because from those cases that I referred to, the Supreme Court has said that the question is whether the individual in question, to quote Singleton, can be regarded as actually falling in the land of naval forces. And the question, of course, is can be regarded by whom? And it seems to me that this court has two choices. Choice number one is to say can be regarded by Congress, at which point we are ceding an enormous amount of power to the legislature. And I don't know how you could impose a sham limit if can be regarded as deferring to Congress. Or can be regarded as actually falling in the land of naval forces by those whose job it is to interpret Article I, Section 8, Clause 14, i.e., the courts. And in that context, Judge Walker, it seems to me that courts could still show deference to Congress by giving Congress the benefit of the doubt. But that deference has to be about the actual functions these individuals are tasked with performing and not just the label Congress places on them. Do you think it could be? Oh, sorry. No, please, Judge. Oh, I guess I'm not sure. So in your understanding, if someone is an active service member, then this is just automatically met your standard. So I think it's actually not just mine, Judge Rowell. I think that's Solorio. I mean, I think there's no way to me to read Chief Justice Rehnquist's opinion in Solorio suggesting that there's room for doubt once you have active duty service members. And so where, I guess, why should we think of inactive service members under a functional test, right? So if active duty members are certainly included, you know, Congress has the authority to organize the armed forces as it chooses, including keeping some people in reserve or retired status. You know, why does that category of persons automatically, why are they applied? You know, why should we apply a functional test to that group? So if I may, and I apologize if I misspoke, I don't think that Solorio is a formalist. I think Solorio is recognizing that if you are an active service, you are at every moment of your life functionally subject to plenary military control. You are subject to orders. You can give orders. You are constantly subject to being moved around, to being reassigned, as opposed to inactive personnel. And Judge Rao, I think this is where we get into something the government really doesn't address in any detail, which is why retirees are the only inactive personnel who are subject to court-martial. Because if we actually look at how Congress and the Department of Defense have structured the government's priorities for who it's going to rely upon when it needs reserve supplemental manpower, retirees are at the bottom, right? The ready reserve is the primary, the principal, the favored body of additional manpower, and yet none of them are subject to court-martial when they're inactive, even though they are subject to training requirements, even though they can be subject to drug screening if they're in the Marine Corps. So Judge Rao, it's not that we think it's one test for one category and one test for another. It's that we think there are features of active service that necessarily satisfy the test. And why does that not bring us back to O'Callaghan's test, that there has to be some type of service connection? If you're saying even an active duty service member, you know, we think about that in a functional way, you know, whether or not they're within the land and naval forces, then why does that not return us to O'Callaghan, which of course was, which of course was reversed by the spring. Yeah. I mean, so, you know, the government, I think, criticizes us for trying to bring back O'Callaghan. We're not. Right. That O'Callaghan, I think, was misguided in thinking that active duty personnel somehow take off their uniforms when they go home at night. Right. And that was the point of Chief Justice Rehnquist's opinion in Solorio, was to say, that's just not true in practice. It's just not true in application. Right. That if you are an active duty service member, you are always on, even when you're not on the battlefield on the front line. So is your principle different from O'Callaghan, or is just your application of the principle different? I think our principle is different, Judge Rob, because we don't think the question is whether the offense is service connected. We don't think that court martial jurisdiction in the first instance turns on the substance of the offense. It turns on the relationship of the offender to the military. Again, to quote Singleton on the military. I'm sorry. Service connection. I mean, you know, isn't that what your test boils down to? But I don't. So Judge Rob, I don't believe so. And here's why. The service connection test as articulated by Justice Douglas in O'Callaghan was about the conduct. It was about whether the specific offense for which the service member was being court-martialed had a nexus to the military. We're not, our primary submission before this court has nothing to do with the relationship between Mr. Larrabee's offenses and the military and everything to do with the fact that when those offenses were committed, Mr. Larrabee himself had no relationship to the military. That's not service connection on the offense side, Your Honor. That's about whether he is functionally subject to orders at the time the military is exerting jurisdiction over him. All right. And I understand that the service connection, that was a backup argument. Your main argument is members of the fleet reserve core here are not members of the military. What's your, what's your answer to, the government's argument that, and the test is whether they're subject, whether they have military duties and are subject to orders and the government says, well, they are subject to an order to be recalled. What's your answer to that? Judge Cato, from our perspective, that actually proves our point. They're subject to exactly one order, as opposed to, as opposed to reservists who are subject to a far wider range of orders. Reservists can be ordered to training while they are inactive. That's the whole point of inactive duty training. The only order that can be issued to my client that he is bound to obey is an order to recall. And Judge Cato, to go back to your question to opposing counsel, in Boghani, the parallel case in the Navy Marine Corps, Court of Criminal Appeals, Chief Judge Crisfield in his dissent, in footnote one of his dissent, which your honors will find at page 787 of 79 MJ. Judge Cato, Chief Judge Crisfield went out of his way to point out that none of the regulatory obligations the government has highlighted, including keeping the government apprised of a mailing address, come with any consequences for being violated. That is to say that Mr. Larrabee could not be court-martialed if he simply failed to keep the government apprised of his current mailing address. Are there any other, I hate to use the word service-related because I don't want to get you back into your backup argument, but are there other offenses that members of the Fleet Marine Corps can commit beyond not notifying the Department of their address or wearing their uniform improperly? Are there offenses for which they can be court-martialed? Like what about, I use the example of disrespecting an officer or there must be other things like that, right? What happens to them? So Judge Cato, the government's position is that any offense prescribed by the UCMJ, including the use of contemptuous words toward an officer, which is Article 88. Right. But my question is as a practical matter, do you know whether these people are court-martialed for that sort of offense? Well, let me start from the, from the, from the, I think relatively important baseline that we haven't seen that many of these cases until recently. And Judge Cato, the ones I'm familiar with do not involve those kinds of offenses. If I might, the government does point out. What do they involve? What kinds, what kind of cases do you see? I think they are typically, I mean, the, this is going to be a bit uncouth, but the, the sort of the core of, of most court-martials these days are drug offenses, sex offenses, and child pornography offenses. And I think that's been the consistent theme of these cases as well, which does bring me back. I do want to get back to Judge Walker's question to opposing counsel, but, but Judge Cato on the, on the, what can a retiree do to actually earn the wrath of the military? I mean, the government at one point points to the ban on foreign employment as an example, but of course, Your Honors, that actually, I think, undercuts the government's position in two respects. First, that ban applies to everybody who has been an executive bench employee, including civilians. And in fact, 18 USC section 207, the ban specifically exempts retired military officers from at least some of the prohibitions. So, you know, I think the relevant point is that Congress does not specially treat retirees or members of the Fleet Marine Corps Reserve as if they're uniquely subject to retirees. The government's position is just that they're subject to military discipline because they're not any different from active duty service members. And that's why, from our perspective, Your Honors, the government's position is so limitless. That's why the 90 year old Korean war veteran can be court-martialed for shoplifting on the government's theory under the laws that stands today. Under your theory, could a Fleet Reservist be court-martialed for conduct he commits while wearing his uniform? While wearing his uniform, Judge Walker, no, because he's still retired. And if I may, the uniform regulation about which the government makes so much is actually worded very carefully to disallow, to prohibit wearing the uniform in contexts in which the wearing of the uniform might convey that the person is acting with military authority. It's meant to be ceremonial. So ceremonies is the answer to when he can wear a uniform? We cite the relevant regulation in our briefs, Judge Walker, the government does as well. I believe we excerpt some of it in the appendix to our brief. Judge Walker, the short version is ceremonial occasions, retirement ceremonies for colleagues, promotion ceremonies, but in no context in which it's supposed to be allowed to convey any substantive authority. Let me ask two questions. I think the answer to both of them are no, but I just want to make sure that we're on the same page. Are there any cases in which a court told Congress that it incorrectly defined someone as a third, as a serviceman? I am not aware of a case like that, Judge Walker. I will just say, if I may, there are two cases that we cite in our brief, one in the court of military appeals and one from the ninth circuit where the courts noted that there would be serious constitutional questions. If an individual who was a reservist was tried for offenses committed while he was fully inactive, as opposed to while he was on inactive duty training. I appreciate that. And then the second question about precedent, are there any still governing cases in which a court deemed someone a servicemember at the time of both the offense and the servicemembers trial, but then prohibited that servicemember from being court-martialed? On jurisdictional grounds, Your Honor. And the time of trial. The short answer, Your Honor, is yes, but it's a little technical. So Your Honor might be familiar with the Hennis case on the army side where there was a question about a now defunct old version of article three of the UCMJ. So let me back up a second, Judge Walker, and I apologize for getting into the weeds. There's a category of offenses, Your Honors, which actually I think are relevant to this discussion, where a servicemember has a break in their service, let's say between multiple tours. And the law has always been that the servicemember cannot be tried for offenses committed during the break. Judge Walker, there was until I believe 1990 or 1992 statutory constraints on the ability to  to serve in the military. And that still applied to pre 1992 offenses, but it's no longer enforced. So I'm sorry for getting such a technical weedsy answer to your question. It's helpful. And no, I heard someone else jump in. If I might just, I'm sorry. No, no, finish your answer. If I, if I might just extrapolate from that though, I think there's value even in that technical footnote, which is to say that the service break point illustrates what we think is the  And that is that everyone except retirees, an inactive reservist judge Walker who commits an offense while they are on active duty or inactive duty training, but is inactive at the time of his or her arrest can be activated for the purpose of being tried, right. For the offense committed while active. Right. Ditto. Right. And so in that respect, like the service break, right. It really is more of an illusory specter as we've suggested in our brief. And so if they committed offenses, judge Walker, while on active service, they can be recalled to be tried for those, the issues offenses committed in the break. What I'd be interested to hear your reaction to the discussion I was having with Ms. Farmer about deference. And particularly in response to my invocation of toast, she said, well, I don't have to worry about toast because that involves a civilian. Yeah. I mean, I think as you know, just, you know, I mean, we disagree that, that, that sort of begs the question to assert that in top the, the accused was a civilian on the deference point. I mean, I just want to be clear. How would you, how would you, but that's the way she distinguishes the case. She says, of course you will defer. The courts have to defer when you're talking about civilians. I think the question is what made, what does she don't think? I'm sorry. No, go ahead. Finish. I think the question is what made top the civilian? Was he, was he a civilian simply because Congress had not deemed him to be a member of the armed forces or was he, was he a civilian in function? And this judge handle goes to I was, I was a bit surprised that Ms. Farmer brought up the discussion in Guadalajara where at the end, I think it's page two 86, where the court talks about options available to Congress. If it wanted to remedy the jurisdictional defect that the majority was there identifying the point that the court was making about conscription was not that Congress could turn around and say a civilian employee like Guadalajara can simply be deemed a member of the armed forces. The point was that he could be conscripted into active service. And that's the exact distinction that we think all of those cases all but say out loud, which is that it's not about the formality of what Congress has said. Okay. And one more question about the conversation I was having with her. It's a practical matter. If it turns out that the military can't treat members of the fleet Marine Corps as members of the military for purposes of a court martial, how would the military, how would the military handle crimes like the one involved in this case? So I'm glad you gave me a chance to come back to that. I think there are a couple of points worth making here. The first is the government represented to the district court, I think quite correctly that it still has the power to pursue administrative separation that to judge Walker's concern, it could actually act against a retiree to say you can no longer wear your uniform. You can no longer use your title if you've been convicted of civilian offenses. This court, I'm sure it's familiar with the Hiss Act, which of course we cite in our brief, which provides for the stripping of benefits. In this case, Mr Larrabee's retainer pay in circumstances in which an individual has been convicted of particular offenses by a civilian court. And so just to know from our perspective, the government has any number of remedies available to it when retired service members behave badly. What about a crime like this? I think we've, I mean, we've, as, as your honor's call, we've suggested we've identified at least two distinct offenses that the district court pursued Mr Larrabee for had, had the government, in our view correctly, how the court marshal him. You said any number of remedies, military has any number of remedies, but the two you just gave strike me as insufficient to solve the problem. That doesn't matter that I think it's insufficient. I'm not a policymaker, but it matters that Congress might have thought them insufficient to solve a problem as big as the problem that, that Ms. Barrymore and I were talking about. And if Congress thought the best way to solve that problem, to uphold the reputation and honor and integrity of military so that we can have as strong a fighting force as possible, including a fighting force that our, our best potential warriors want to join. If Congress thought the best way to do that is to have the support marshal regime for anyone who wears a uniform ever, who are we as judges to say, well, there are other remedies that that Congress could have done or that the military could have done. They chose this one. So, I mean, I think judge Walker, as judges, your honors are the same judges who in Toth and Covert and Guagliardo and Grisham and Singleton, did not defer to similar judgments by Congress. And indeed judge Walker, in those cases, those judgments actually had been made. I will just point out your honor, the government has never pointed to any suggestion that at any point in time, Congress was worried about that problem in particular, but in Toth and Guagliardo and all those cases, Congress had identified a very specific problem. And the very specific problem Congress had identified was the gap in criminal jurisdiction for American citizens overseas. And for American citizens who are outside of the military and judge Walker, even that gap, which all agreed was a gap, wasn't sufficient for the Supreme court majorities in all six of those cases. And so, you know, I understand the court's reluctance to second guess what we might think of as battlefield judgments by Congress. But we are not disputing Congress's power to substantively regulate Mr. Larrabee. We are not disputing the validity of the regulations, the administrative regulations he's bound by. We're not disputing that he's subject to recall to active duty at any time. We're disputing that those things by themselves allow Congress to dispense with the safeguards of an article three trial and of the rights to which Mr. Larrabee would otherwise be entitled under the fifth and sixth amendments. And if I may, your honors, I realized we're over time. I'm sorry, Judge Tatel. No, you go ahead. I think it's worth stressing because I don't think this gets said enough. I mean, there are meaningful significant differences in what a court martial looks like today and a civilian criminal prosecution. In a court martial, Mr. Larrabee has no right to unanimous conviction. He has no right to a fair cross section of jurors. There are substantive offenses that would be constitutionally precluded from civilian trial that the government's allowed to try in a court martial. And so, you know, these are not the courts martial of old that Justice Black decried as a rough form of justice, but they're still not the civilian courts to which, you know, we put the constitution in top of the bar. Let me, no, you go ahead. Oh, okay. Thank you. Yeah, I guess, you know, I certainly share some of your concerns that there needs to be some type of, of outer boundary, but I am concerned about administrability and where we set that test. And, and so I think your test, for instance, is, is somewhat different than the test, the district court articulated below. And it seems there are even other ways that one could articulate a test of, you know, how we figure out who was in the land and naval services. So I'm wondering if you could just state maybe clearly, you know, what the test is you propose and why you think that, I assume you believe that would not lead to administrability problems, which I. Of course. And so just to be clear, our test is, someone is in the land and naval forces for purpose of article one, section of clause 14, if they are subject to and able to give orders, plural, that is to say more than just a recall order, more than because more than just a conscription order, an activation order. So, so Mr. Glodick, where does that functional test come from? That has to be orders. Like, you know, in this case, you say there's only one order, but your test requires more than one order. I mean, where do we find that test, you know, in the text or structure of the constitution, you know, in historical practice, where does that test come from? I mean, I think, I think it comes. So of course, textually, right. Article one, section of clause 14, just refers to the land and naval forces without fleshing out what it says. The grand jury indictment clause refers to cases arising in the land and naval forces. So, you know, those are our two textual hooks. I agree, Judge Rauh, they don't compel this answer, but if we actually are going to focus on, you know, original understanding in this context, it's more than a little relevant I think that the founders were deeply distrustful of military tribunals and that indeed the founders were very nervous about expansive military jurisdiction. What about, what do you make, I'm glad that you mentioned original meaning, what do you make of the original meaning of the word government in this clause, right? Make rules for the government and regulation. I mean, in some of the research I've done, I mean, government is an incredibly broad term as used at the time of the founding to manage or control. It's something arguably broader than just regulating. And so, so I'm interested to know if you, if you've looked at that question and how you think that might relate to your argument. I have all the, perhaps not as much as your honor. And I'll just say that, you know, I think the, the term government has been understood at least historically to imply that where you have the land and naval forces, the government's powers plenary that as opposed to, for example, the commerce clause or Congress's other more, more specifically enumerated powers in article one, section eight, government is a police power, much as the Congress exercises over the seat of government, much as Congress exercises over public buildings and, and native American reservations. And so, you know, from that perspective, that to us gets us to Solorio and the deference to which Congress is entitled when regulating those who no one questions are in the land and naval forces. It's the boundary question where I think there's no similar historical argument for deference. And indeed where I think it's telling that for all of the times that the Supreme court has reiterated deference to judgments about the military, every single one of those cases involved active duty personnel and the government through the briefing in this case, through the parallel briefing in Bogani has never identified an example of a single case where an appellate court gave deference to Congress's determination with regard to inactive personnel. Well, but I mean, that's why this case is, is unique, right? But also, I mean, this is also not a civilian, which is what was involved in the other cases, right? We, I mean, we, we freely concede. We don't think this case is controlled by either line of precedent, which I think runs counter to some of the claims in the government's opening brief. The point to us, your honors, is between those two polls is not a mushy gray zone with no clarity, right? The point is that Congress activates its authority by defining a class of offenders who Congress believes falls within the term land and naval forces. And the question for the courts is simply whether that determination by Congress is correct. And that's why judge route, the boundary cases, I think are not going to arise on a seriatim basis. It's a category by category determination by Congress. Isn't your point in the boundary cases that we, can we, can we decide the boundary cases without taking account of article three and the fifth and six amendments? In other words, doesn't the, what I call the tone, some of the scale calculate play a role in this calculation. In other words, if, if, if, as you said, neither line, no law, neither line of cases controls this. And the case could quote, you know, go either way just on the basis of the language that the tiebreaker is both them. The need to put to preserve the article three, second five amendment five and six hours, right? So just, you know, I would say there are two tiebreakers if you'll indulge me that the first one of them, one of them, right. And that line of cases, but, but your honors, I think there's a second tiebreaker that we don't talk about enough in these cases, which is the more general skepticism. The Supreme court has shown toward any departures from article three, not just in the military context. I mean, I think, you know, in Stern versus Marshall, the chief justice's majority opinion went out of its way to suggest that there are reasons why we are very wary of departure from article three, even if unlike in this case, we didn't have concerns about the non article three forum. And so I think they're actually two different pressures, both tilting toward civilian courts in these cases, as opposed to courts Marshall. Can I ask a question along the lines of judge Val's inquiry about original public meeting judge mags is concurrence in Pagani. If I'm remembering right, talks about some founding era cases where furloughed soldiers were court marshaled, even though I, I, I think correct me if I'm wrong, they were subject to no orders other than the one order that Larabee is subject to a recall order. Congress pardoned them, but didn't pardon them on jurisdictional grounds. Can you talk about that? Yeah. I mean, so it was just a footnote judge Walker on a matter that wasn't extensively briefed in Pagani, but, but if, if from my research, where judge masses concurrence, I think overstates things is in suggesting that furloughed soldiers are analogous to retirees. And here's the key difference. A furlough as it was understood at the founding was a temporary leave of absence from a geographic area. It was basically just sort of a temporary suspension of duty, which usually had a fixed duration, judge Walker, a weekend, furlough, a two week pass, something like that. No one understood furloughs at the time to be changes in the underlying status of the service member in contrast to retirees who are not subject to any kind of temporary fluctuations who are categorically inactive. It sounds like though you're, you're shifting from the functionalist argument that you made earlier to now a more formalist argument about status. If, if we take your functional test, you can be court-martialed if you're subject to more than one order, you cannot be court-martialed if you are subject to only one order. The, these furlough cases are inconsistent with that. So with respect to Walker, I'm not sure they are because I think that the key is that the status to which I'm referring is not the status at the moment. It's the status. It's your legal status. A furloughed soldier is still in active service legally. And so from that perspective, the, the question again, and this goes back to categories versus cases. The reason why we think the question is the class of individuals as a category is it's whether that class of individuals as a category is generally subject to orders or not to orders. And so the government, for example, points to specific examples of certain active duty personnel who can't give orders, right? To us, that misses the point. The question is whether this, the class Congress has identified in one of the subsections of article 2A of the UCMJ is that class of individuals, a class that is generally subject to orders. And judge Walker, that definition gives Congress an awful lot of latitude. If Congress wanted to continue to hold retirees to the UCMJ, it could simply impose upon them regular military responsibilities. I think the relevant point that I think we haven't spent a lot of time talking about is Congress hasn't touched any of this in over 70 years. I mean, the two provisions of article two that Congress has never amended are 2A4, which is retirees and 2A6, which is the one at issue here. And so the notion that Congress has been sort of steadily updating this as retirees have become more and more anachronistic as the notion that retirees are going to be the fallback in an emergency has become less and less accurate. You know, that's where I think the court's obligation really becomes especially imperative because otherwise this is jurisdiction in perpetuity by inertia. So let me just, before you sit down, make sure I totally understand your basic argument here. Your view is that under Toth and Solerio, the question is whether someone is actually a member or part of the armed services and that members of the fleet Marine Corps are not because they have no military duties and are not subject to any orders, correct? So they are not members or part of the armed services. They're not under clause 14 of the constitution, part of the naval forces and that the only order they are subject to, that's the gateway back to being a member or part of the armed forces. Is that your position? It is Matt and I did it in much less than 32 minutes. So that's it, right? So your answer, because I've struggled with this question of how do I think about the order to return to active service? Because these people are subject to that order, correct? They are, but of course, you can't say that members of the fleet Marine Corps are not subject to military orders. They are subject to this one, right? But I take it your view is, but that they, that order is, why don't you answer my question before I do? I think that order is too generous. And what I mean by that is, you know, there has to be some mechanism by which the government can conscript. And so, for example, I as a member of the selective service am theoretically subject to one order. If Congress were to pass the right statutes to activate the call up of the selective service, that does not mean that because I'm subject to one order in the future, I am today subject to military orders. I don't mean to personalize this, but I think the point is that there has to be an on-off switch that allows Congress to trigger the body going forward. That order though is not something that, first of all, is a realist expector for the overwhelming majority of retirees. As we point out, over two thirds of retirees are actually categorically ineligible for recall under the government's own criteria. That can't be the same. I mean, if that changes in the future. No, of course. I don't mean to get, I don't mean to get. No, but isn't your point that I just want to make sure I understand it. Cause as you could tell from my questioning of Ms. Farmer, to me, this question is critical. This is a central issue in this case. So your view is that the, the order to return to active duty, that's the, that's what, that's the difference. That's how you go from being quote, not being actually a member of the part of the military, becoming an actual member of the military. Right. And I take it someone who violated that order will be subject to court martial. Right. Yes. And as we say in the briefing, Billings versus Truesdell, and in the Gwinn case, the Gwinn case, I'm sorry. The courts have said that failure to respond to the order, but judge fatal failure to respond subjects you to court martial, not as an inactive person, but as an active person refusing to acknowledge your active status. And if I might take a step back, this is, I don't mean to be coy. I mean, this is how the militia works and how it works at the founding. A member of the militia was not subject to military orders until the militia was called forth. A member of the national guard is not subject to military orders until the national guard is activated. And so I just, I understand that this is a stumbling block for the court. I just want to suggest that this is a sort of a ubiquitous dividing line in this area. Okay. Great. Okay. Well, unless my colleagues have any further questions, do you, Judge Lark, are you okay? All right. Great. Ms. Farmer, you can have three minutes. And I'm going to take up the first 30 seconds of it with two questions. Number one, what's your answer to Mr. Plattick's point about that he just made about the militia and the national guard. They are also subject to just one order and they were never considered part of the military until that order was issued. That's question number one. Yes, Your Honor. So the militia actually underscore our main argument here because the militia is subject to a unique protection under the Fifth Amendment's grand jury clause exception that applies to the militia, quote, when in actual service, which is distinct from the land and naval forces where they're exempt from the grand jury clause at all times. And that's what the Supreme Court said in Johnson v. Sayre. So in the constitution, you have this textual distinction saying that active duty does matter for the militia, but not for the land and naval forces. And that is the interpretation Supreme Court has adopted. And what's your answer to his hypothetical about the 90-year-old Korean war veteran charged with court-martial for shoplifting? I have a couple of responses to the 90-year-old war veteran hypothetical, which is that that just is not this case. The Fleet Marine Corps Reserve does not have 90-year-old veterans. We know it's not this case. But the question we have to decide, the question we have to wrestle with in deciding the case are what are its implications? And his position is that if you're right, then a 90-year-old Korean war veteran can be court-martialed for shoplifting. Is that true? So this actually gets into the first point that I wanted to make in response. Right. So my answer to your question is that there really is a need for this court to decide that type of edge case in this case, because this case only deals with the Fleet Marine Corps Reserve. It does not deal with retirees for length of service. So the Fleet Marine Corps Reserve, their members have only been in for 20 to 30 years. After 30 years, which would be the 90-year-old Korean war veteran, they're transferred to the retired list. And so while there are many cases recognizing that retirees are not retirees like that individual would be in the land and naval forces, that case is not presented here because all of those types of concerns are just not an issue in the Fleet Marine Corps Reserve. Why that's hypothetical about a Fleet Marine, a Fleet Reservist who is court-martialed for criticizing the president. Does your theory allow for that? So a couple of points there, Your Honor. So Article 88 prohibits contemptuous words, not just blanket criticism, but contemptuous words. And Congress has ample authority. Let me just, if I could, Judge Walker, amend your hypothetical. He criticized the government, the president, contemptuously. Absolutely, Your Honor. The UCMJ has saved a broader amount of conduct that necessarily is military. That is going to be broader than civilian codes. And we do not contest that Congress has that ability under Clause 14 to make rules governing the land and naval forces in a way that ensures obedience and discipline in the chain of command. There are just unique considerations in the military context. So that court-martial would be okay? Your Honor, we don't contest that the full UCMJ would apply to the Fleet Marine Corps Reserve, which does include Article 88. So that court-martial would be okay? Yes, Your Honor, I understand the hypothetical. And so the second point I would like to make, apart from just that this court does not need to decide these edge cases here because the Fleet Marine Corps Reserve satisfies either a formal or a functional test, especially supported by the longstanding historical practice with respect to retirees. Inactive duty is also not a distinction that this court should make for Clause 14 for several reasons. We've already talked about the Fifth Amendment. Could you just say again, what's the distinction we shouldn't make? Between inactive duty and active duty service members. There's been a lot of discussion about that it might matter that Fleet Marine Corps Reservists are on inactive duty. But as we just talked about with the Fifth Amendment succession for the Grand Jury Clause, there is no active duty requirement for the land and naval forces. That's not part of Clause 14's plain meaning, which Delorio highlighted. The Supreme Court in Tyler highlighted that qualified relief from active duty did not change things. And really that gets back to the purpose of Clause 14, which is to have a military that's ready to fight wars should they arise. Not necessarily to fight a war today, but Congress's responsibility is to prepare the nation for future armed conflict. Was there a practice of having inactive service members at the time of the founding? So I would point this court to, we've discussed a little bit, Judge Maggs' concurrence. The Court of Appeals for the Armed Forces recently decided this issue in Begani. He carefully went through the historical record on this point. And the example of furloughed soldiers, which Judge Walker raised does provide an example where they were not on active duty. They were allowed to be absent from their regiments, which Judge Maggs recognized meant that they had no actual requirements of doing anything while they were inactive. But they could be recalled at any time right after the Revolutionary War because there was a concern that maybe the war wasn't really over. And they were subject to court martial jurisdiction for mutiny, which was a military event. One last point I would like to make in response to this service break idea that Mr. Vladeck raised. In 2016 Congress actually did amend the UCMJ with respect to inactive reservists to extend court martial jurisdiction over the service break period between training, inactive training requirements. So for example, if you might go for a weekend and be in training on like a Friday and a Saturday and you were to go out on Friday night and get into trouble, that would be historically considered a break in your service. But Congress decided to extend UCMJ jurisdiction to cover that Friday night period. And so Congress does carefully, you know, amend the UCMJ from time to time to take into account these practical realities. Judge Ronald, Judge Walker, do you have any other questions? Not for me. Okay. Ms. Farmer, Mr. Vladeck, thank you for your arguments this morning. The case is submitted.
judges: Tatel, Rao, Walker